**GEORGIA–PACIFIC PLYWOOD COM-
PANY, Plaintiff,**

v.

**UNITED STATES PLYWOOD CORPO-
RATION, Defendant.**

United States District Court
S. D. New York.

Feb. 16, 1956.

John Vaughan Groner, New York City
(Delavan P. Smith, New York City, of
counsel), for plaintiff.

Darby & Darby, James M. Heilman
and Heilman & Heilman, New York City
(Floyd H. Crews, New York City, of
counsel), for defendant.

IRVING R. KAUFMAN, District
Judge.

Plaintiff has moved under the provi-
sions of Rule 34 of the Federal Rules of
Civil Procedure, 28 U.S.C.A., for an or-
der authorizing discovery of various doc-
uments relating to a prior litigation
brought by defendant involving the va-
lidity of patents contested in the present
action. The defendant has consented to

produce all such documents except those which it contends are privileged as being between defendant and its counsel. Plaintiff now agrees that communications between United States Plywood and outside counsel are privileged and contests only the privileged status of Mr. James M. Heilman, who was "Director, Legal and Patent Department" of the defendant. Plaintiff bases its position on the fact that Mr. Heilman, although resident and having offices in New York City was not licensed to practice law in New York State during the period of the prior litigation. It is conceded that he was a member of the District of Columbia and Pennsylvania bars.

It is unnecessary at this time to set forth with precision every qualification necessary to found a justified claim of privilege. It will be sufficient to repeat the main qualifications enunciated by Judge Wyzanski in his decision in United States v. United Shoe Machinery Corp., D.C.Mass.1950, 89 F.Supp. 357, 358:

> "(1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client."

Since communications by the attorney to the client might reveal the substance of a client's communication they are also within the privilege.

Plaintiff concedes that communications between Mr. Heilman and defendant's outside counsel dealing with legal matters are privileged at least as to those between an employee of the client and an attorney. Since it necessarily follows from this that information given to Mr. Heilman by the defendant to transmit to outside counsel is also privileged, the sole problem is whether information given by defendant to Mr. Heilman for his own legal views and his replies to those inquiries are privileged communications and therefore exempted from discovery under Rule 34.

 In order to resolve this question it must be determined whether Mr. Heilman comes within requirement two, supra, "the person to whom the communication was made (a) is a member of the bar of a court, * * * and (b) in connection with this communication is acting as a lawyer". The fact that Mr. Heilman was a corporate employee rather than an autonomous lawyer does not exclude him from the position of "attorney" within the privilege. House counsel are required to have the same degree of training, skill, knowledge and professional integrity as outside counsel. Connecticut Mutual Life Ins. Co. v. Shields, D.C.S.D.N.Y.1954, 16 F.R.D. 5, 7; United States v. United Shoe Machinery Corp., supra, 89 F.Supp. at page 360. The primary requirement is the same for both, that *"in connection with this communication"* they act as lawyers. Communications dealing exclusively with the solicitation or giving of business advice, or with the technical engineering aspects of patent procurement or with any other matters which may as easily be handled by laymen are not privileged. Zenith Radio Corp. v. Radio Corp. of America, D.C.Del.1954, 121 F.Supp. 792, 794; United States v. United Shoe Machinery Corp., supra, 89 F.Supp. at page 360.

██ Although a substantial part of Mr. Heilman's duties for United States

Plywood was undoubtedly non-legal, he was, nevertheless, head of the legal department maintained by United States Plywood, did participate actively in the prior litigation and argued matters in court, took depositions, etc. He is, therefore, entitled to be considered a house counsel rather than a patent lawyer within the precedents cited. To the extent that particular communications were largely concerned with opinions on law, legal services or assistance in some legal proceeding, Mr. Heilman was acting as an attorney, and if the other qualifications are satisfied, these communications are privileged.

We now approach the major issue in this case: Whether one who is resident and practicing law by acting as house counsel for a corporation in a state in which he has not been admitted to the bar, may nevertheless qualify as an attorney for purposes of the privilege if he has been licensed elsewhere. There is scant authority available on this point. One Canadian case, which involved a Canadian lawyer giving legal advice to a New York citizen in New York on American law, resulted in a divided court holding the communications not privileged. United States v. Mammoth Oil Co. [1925] 2 D.L.R. 966 (Sup.Ct.Ont.App. Div.1925). There were a number of extrinsic elements involved in that case, including the fact that an American court had ordered the lawyer examined as a witness in an action pending in a federal court in the United States. In any event, the case is certainly not binding on this court.

Plaintiff urges upon us Judge Wyzanski's statement in the United Shoe case, 89 F.Supp. at page 360: "The fact that they, though resident in Massachusetts and regularly working here, have never received a license to practice law here shows that these regular employees are not acting as attorneys for United." Although I recognize some ambiguity can result in extracting out of context a portion of the court's opinion, I be-

lieve the court was using non-membership in the bar as merely one factor in determining whether the work done by the patent department came within the "acting as a lawyer" requirement. It does not indicate that there should be automatic exclusion from the privilege when the attorney is not licensed in the state.

There are two basic reasons for excluding lawyers who are not members of the state bar from the status of "attorneys" within the attorney-client privilege. One is theoretical, the other practical. The first is based on the idea that since one government cannot grant a person a license which will be operative outside its own boundaries, therefore a confidential communication to that person made in another state should stand on no better basis than one made in confidence to a layman. See 1 Morgan, Basic Problems of Evidence 99 (1954). The obvious answer to this is that the second state is not bound to define its privileges in the same way as the first. It may grant the privilege to one not licensed anywhere or deny it to one licensed in its own state. The second reason is based on the idea that removing the privilege will act as a further incentive to people in Mr. Heilman's position to acquire local licenses. Although I recognize that there is nothing so sacrosanct about the attorney-client privilege, that it may not be curtailed when it runs afoul of a more important social policy, I do not find that to be the case here. If the threat of possible penal sanctions, N.Y.Penal Code, § 271, is an insufficient deterrent, it is hardly likely that this further measure will do the trick.

Furthermore, because of the requirement of re-examination in most states, the house counsel of a multi-state corporation is placed in an extremely difficult position. At the time of the prior litigation, United States Plywood had 50 warehouses in approximately 35 different states. Since corporate counsel will often

be required to spend a great deal of time in different localities, the client may be deprived of the security of the attorney-client privilege unless counsel devotes himself almost entirely to studying for bar examinations. Indeed, during the entire period of the Zeesman litigation, which was commenced on March 31, 1948 and ended on July 26, 1951, Heilman was house counsel for defendant with his office and headquarters in New York. During that litigation Heilman spent approximately one-half of his time on that litigation as counsel and spent more than six months outside of New York working exclusively on that case. Throughout that litigation Heilman's name appeared as counsel on all the papers filed in the case and he argued matters as they arose with the permission of the court. He was present at depositions taken in 14 cities. Certainly, we are cognizant of the liberality with which foreign counsel are given leave to appear in litigation pending in federal courts to which they are not admitted.

Some commentators believe that the theory of the privilege—i. e., that unless the client is assured that his confidences will be kept, he will not communicate all of the pertinent facts with the fullest freedom and honesty and, therefore, the social good derived from the proper performance of the functions of lawyers for their clients will be impaired—requires that the client's "bona fide" belief in the status of his advisor as an attorney should entitle him to the privilege regardless of whether that person has been licensed anywhere. See Wigmore, Evidence, § 2302 (3d ed.); American Law Institute Model Code of Evidence, § 209 (b) (1942). There is no question here but that defendant entertained a bona fide belief in the status of Heilman as his

counsel in the Zeesman litigation. The Model Code of Evidence further provides in § 209(b) that regardless of any belief by the client, if a person is authorized "to practice law in any state or nation the law of which recognizes a privilege against disclosure of confidential communications between client and lawyer," that person is a lawyer within the privilege.

■ If I am not yet prepared to go as far as Wigmore or the Model Code of Evidence, and indeed it is not necessary for me to do so in the present case, I at least find myself in agreement with the views of Judge Leahy in Zenith Radio Corp. v. Radio Corp. of America, D.C. Del.1954, 121 F.Supp. 792, at page 794:

"Bar membership should properly be of the court for the area wherein the services are rendered, but this is not a sine qua non, e. g., visiting counsel, long distance services by correspondence, pro hac vice services, 'house counsel' who practice law only for the corporate client and its affiliates and not for the public generally, for which local authorities do not insist on admission to the local bar."

I, therefore, decide that Mr. Heilman is entitled to the status of "attorney" and his client, United States Plywood, is entitled to claim the privilege. To hold otherwise would be to place more emphasis on form rather than substance and to blind ourselves to the realities which exist in the representation of a corporation national in scope with litigation reaching into many states. Simultaneously with the filing of this opinion I have signed the proposed order submitted by the defendant carrying my holding into effect.